UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DOUGLAS RICHEY,<br><br>                          Plaintiff,<br><br>        v.<br><br>AXON ENTERPRISES, INC,<br><br>                          Defendant. | Case No. 3:19-cv-00192-MMD-CLB<br><br>ORDER |

## I.    SUMMARY

This action stems from a dispute relating to the alleged defective design of certain models of conducted electrical weapons ("CEWs") manufactured by Defendant Axon Enterprises, Inc. ("Axon"). Before the Court is Axon's motion to dismiss ("Motion") Plaintiff Douglas Richey's complaint asserting federal and state law claims ("Complaint") (ECF No. 1). (ECF No. 29.) For the reasons discussed below, the Motion is granted in part and denied in part.

## II.   BACKGROUND

The following background facts are adopted from the Complaint.

Axon, formerly Taser International, Inc., manufactures CEWs (also known as "Tasers"). (ECF No. 29 at 10.) Axon has developed the Pulse, X2, and X26P models of CEWs, and has previously manufactured the now discontinued C2 model of CEW. (*Id.*) Each of Axon's CEW models are covered with an express limited warranty ("Warranty"). (ECF No. 1 at 9; ECF No. 29 at 10.) The Warranty represents that the models will be "free from defects in workmanship and materials for a period of ONE (1) YEAR from the date of receipt." (*Id.*) The Warranty also provides that if the company receives a "valid warranty claim" within the warranty period, Axon will "repair or replace the product" and that Axon's

"sole responsibility under this warranty is to either repair or replace with the same or like product, at [Axon's] discretion." (ECF No. 1 at 9; ECF No. 29 at 10.)

In 2016, Richey purchased a C2 model CEW from Axon. (ECF No. 1 at 6.) In October of that year, Richey fired the weapon, but it malfunctioned when the prongs ejected only one to two feet. (*Id.*) Richey then notified Axon customer service of the issue. (*Id.*) Axon shipped a Pulse model CEW to Richey at his home in Corte Madera, CA as a replacement for his malfunctioning model. (ECF No. 29-1 at 7.)[1] On January 18, 2017, while the safety switch on the CEW was in the "safe" position, the CEW discharged in Richey's pocket without him pulling the trigger. (ECF No. 1 at 6.) The barbs of the CEW stuck into Richey's jacket but, while he had to rip his jacket pocket to free the barbs, he was not personally harmed in the incident. (*Id.*)

After inspecting the device, Richey determined that the safety mechanism had become disengaged. (*Id.* at 6–7.) Specifically, Richey confirmed that the safety mechanism could be disengaged from the "safe" position to the "armed" position by moving the safety lever only a fraction of the way up with little pressure applied. (*Id.*) That same day, Richey contacted Axon's customer service, informing them of the misfire. (*Id.* at 8.) On January 26, 2017, an Axon representative told Richey that "our engineers are currently aware of the safety switch activation [issue] and are working on a solution." (*Id.*) While Axon offered to send Richey two replacement barb cartridges, Axon did not repair or replace Richey's Pulse CEW. (*Id.*) On February 22, 2017, counsel for Richey sent a letter ("Letter") to Axon informing it of the defective safety mechanism in the Pulse, X2 and X26P CEWs. (*Id.* at 20–24.) To date, Axon has not repaired or replaced Richey's Pulse model CEW. (*Id.* at 10.)

On June 25, 2018, Richey filed a putative class action complaint in the United States District Court for the Northern District of California ("California Complaint"). (EFC No. 29-1.) On August 9, 2018, Richey voluntarily dismissed the California Complaint.

---

[1]The Court takes judicial notice of Richey's complaint regarding these same facts filed in the Northern District of California. *See* Fed. R. Evid. 201; *see also infra* Section III.

(ECF No. 29-2.) On April 9, 2019, Richey filed this action, alleging that the Pulse, X2 and X26P models suffered from a design defect that caused the CEWs to accidentally arm and discharge. (ECF No. 1 at 9.) Richey asserted the following claims against Axon: violation of the federal Magnuson-Moss Warranty Act ("the Act"); fraudulent omission; unjust enrichment; and violation of the Nevada Deceptive Trade Practices Act ("NDTPA"). (ECF No. 1.) On July 8, 2019, Axon moved to dismiss all of Richey's claims under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). (ECF No. 29.)

### III. LEGAL STANDARDS

#### A. 12(b)(1) Legal Standard

Rule 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Plaintiff's burden is subject to a preponderance of the evidence standard. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Federal courts are courts of limited jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). "Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party." *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004) (citing Fed. R. Civ. P. 12(b)(1)).

#### B. 12(b)(6) Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original) (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

While a court generally cannot consider matters beyond the pleadings on a motion to dismiss, the court may consider documents "'properly submitted as part of the complaint'" and "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (internal quotations omitted); *see also Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ("[O]n

a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment.").

## IV.    DISCUSSION

Axon seeks dismissal primarily on two grounds. (ECF No. 29.) First, Axon argues that the Court lacks subject matter jurisdiction because Richey lacks standing to bring his claims. (See *id*.) Second, Axon argues that Richey fails to state a claim upon which relief can be granted. (See *id*.) The Court will address the threshold argument as to standing first.

### A.    Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain Cases and Controversies." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013) (internal citations omitted). "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (internal citations omitted); *see also* Fed. R. Civ. P. 12(b)(1).

The "irreducible constitutional minimum" to establish Article III standing requires three elements. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). To survive a motion to dismiss, "the plaintiff must clearly allege facts demonstrating each element." *Id.* (internal quotations omitted). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

Here, Axon argues that Richey cannot establish standing for the Pulse CEW because he cannot show that he suffered any injury from the model. Additionally, Axon argues that Richey cannot establish standing for the X2 and X26P CEWs because he never purchased those models. The Court addresses each contention in turn.

### 1. Pulse Model CEW

Axon states that Richey has suffered no injury to establish Article III standing because Axon replaced Richey's initial malfunctioning C2 model CEW with a Pulse model CEW. (ECF No. 29 at 16.) Additionally, Axon points to Richey's concession that he was not personally harmed from the incident. (ECF No. 29.) Richey responds that an injury for purposes of standing does not require personal harm in the sense that Richey "tased" himself. (ECF No. 36 at 4.) Instead, Richey contends it is sufficient that he could not safely use the replacement Pulse model and that he would not have accepted the replacement if he knew it had a defect. (*Id.*) Richey is correct.

When "plaintiffs spent money that, absent defendants' actions, they would not have spent", the plaintiff establishes a "quintessential injury-in-fact". *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (internal quotations omitted). Here, even though Richey received a replacement CEW, he still ultimately paid money to receive that model. Additionally, Richey has alleged that he would not have purchased a CEW if Axon had disclosed that there were defects in its models. (ECF No. 1 at 15.) As such, the Court finds that Richey has sufficiently alleged an injury in fact and has therefore established standing for the Pulse model CEW.

### 2. X2 and X26P Model CEWs

Axon next argues that Richey does not have standing to bring a class action for the X2 and X26P model CEWs because he never purchased them. (ECF No. 29 at 13.) Axon acknowledges that there is a split of authority regarding whether a plaintiff has standing to bring claims on behalf of consumers who purchased similar, but not identical products. (ECF No. 29 at 13 n.3.) However, Axon argues that this split is not implicated because Richey has failed to allege that the three models are similar. (*Id.*) To support their argument, Axon notes that "nowhere in the Complaint does Richey describe the operation or design of the X2 and X26P CEWs or any purported defects in them." (*Id.*)

Axon is correct that there is a split of authority regarding whether a plaintiff can bring class action claims on behalf of consumers who purchased similar products. *See*,

*e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 889-90 (N.D. Cal. 2012) ("There is no controlling authority on whether Plaintiffs have standing for products they did not purchase."). One view holds that claims for products not purchased by plaintiffs should be dismissed for lack of standing. *See, e.g.*, *Granfield v. NVIDIA Corp.,* No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."). Another view holds that the issue is better addressed at the class certification stage instead of the standing stage. *See Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) ("[The] argument is better taken under the lens of typicality or adequacy of representation, rather than standing.").

However, the majority of courts that have approached this question apply the substantial similarity test to determine if such a plaintiff has standing. *See Hain Celestial Grp.*, 913 F. Supp. 2d at 889–890. Under this test, "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 890. Courts have found that factors relevant to this inquiry include "similarity in products, similarity in claims, similarities in injury to consumers." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 WL 1024182, at *6 (N.D. Cal. Mar. 13, 2014). Products are substantially similar where "the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Golden v. Home Depot, U.S.A, Inc.*, No. 118CV00033LJOJLT, 2018 WL 2441580, at *15 (E.D. Cal. May 31, 2018) (internal quotations omitted).

This Court finds the reasoning of the majority view persuasive and accordingly adopts the substantial similarity test here. The Court recognizes that this approach accords with the Ninth Circuit's guidance that

> [w]hen determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must

reject the temptation to parse too finely, and consider instead the context of the inquiry.

*Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *overruled on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005).

Applying the substantial similarity test to Richey's claims, the Court concludes that he has met his burden at this stage. Richey alleges that the Pulse, X26 and X26P all have the "same traditional hand gun design." (ECF No. 1 at 8.) Additionally, Richey points to a 2013 investigation of the X2 and X26P model CEWs by Canada's Defence Research and Development agency.[2] (*Id.*) Richey alleges that this investigation found that the X2 and X26 models had a similar design flaw to the Pulse model that caused the product to unintentionally move to the "Armed" position.[3] Richey alleges that all three models have this same design flaw. (*Id.*) Richey asserts that Axon failed to disclose this design defect in all three models. (*Id.*) Resolution of the claims for all three models turns on whether Axon took proper action once it became aware of the alleged defect. The Court finds that the Complaint sufficiently alleges that the Pulse, X2 and X26P models are substantially similar. Thus, Richey has established standing for all three models to withstand Axon's standing challenge.

## B.    Federal Claims

Axon argues that Richey's warranty claims asserted under the Act fail as a matter of law for two reasons. First, Axon contends that the warranty claims are time barred. (ECF No. 29 at 17–18). Richey responds that his claims are not time-barred because the duration of the Warranty is different from the statute of limitations. (ECF No. 36 at 15.) Second, Axon argues that Richey fails to state a claim because he does not allege a violation of the express warranty. (ECF No. 29 at 15). Richey counters that even if he has not sufficiently alleged a violation of the express warranty, his claims can proceed under

---

[2]This investigation is incorporated by reference. *See supra* Section III.

[3]*See* Def. R&D Can. – Ctr. for Sec. Sci., Taser X2 Preliminary Investigation, 10 (2013), http://publications.gc.ca/collections/collection_2016/rddc-drdc/D68-3-001-2013-eng.pdf.

an implied warranty theory. (ECF No. 36 at 13.) The Court agrees with Richey that the claims are not time-barred; however, the Court finds that Richey's warranty claims fail under both express and implied warranty theories.

### 1. Statute of Limitations

Axon argues that all of Richey's warranty claims are time-barred because the Warranty is limited to one year from the date of receipt. (ECF No. 29 at 17–18.) Axon contends that because Richey purchased the C2 model in 2016, and a replacement model was shipped in or around October 2016, all warranty claims expired by October 2017—18 months before Richey filed the Complaint in April 2019. (ECF No. 29 at 18.) This argument fails, however, because Axon has mistakenly conflated the duration of the Warranty with the statute of limitations for claims under the Act.

"The [Act] does not contain its own statute of limitations, so [courts] must use the most analogous state statute of limitations." *Gerstle v. American Honda Motor Company, Inc.*, 2017 WL 2797810, at *13 (N.D. Cal., 2017) (citing *Rooney v. Sierra Pac. Windows*, 566 F. App'x. 573, 576 (9th Cir. 2014)). California adopts the same four-year statute of limitations period for breach of warranty as the Uniform Commercial Code.[4] *See Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 291 (Cal. App. 4 Dist. 2009); *see also Rooney*, 566 F. App'x. at 576 (applying California's four-year statute of limitations to violations of the Act).

Here, Richey alleges, and Axon does not dispute, that he received both his original and replacement CEWs in 2016. (ECF No. 1 at 6.) Richey filed this action in April 2019. (*Id.* at 17.) Therefore, Richey brought his claims within the four-year statute of limitations and they are not time-barred.

### 2. Breach of Express Warranty

Next, Axon argues that Richey has failed to state a claim because he does not allege a violation of the express warranty. (ECF No. 29 at 15.) Specifically, Axon contends

---

[4]As discussed below, under choice of law analysis the Court applies California law in evaluating Richey's state law claims. See *infra* Section IV.C.

that (1) Richey fails to explain what written promises Axon made regarding the CEWs (*Id.* at 16), (2) there is no breach because Axon complied with the terms of its Warranty by shipping the Pulse model as a replacement for Plaintiff's malfunctioning C2 model (*Id.*), and (3) the express warranty does not cover design defects, only defects in workmanship and materials (*Id.* at 17). The Court agrees with Axon's third argument. As this argument is dispositive of the issue, the Court declines to address the first two arguments.

Axon contends that the express warranty covers only defects in workmanship and materials, not design defects. (ECF No. 29 at 17.) Axon's Warranty states that "[Axon] warrants that its citizen model CEWs (Bolt, Pulse, X26C, M26C, X26P Professional Series, X2 Professional Series, and C2) . . . are free from defects in *workmanship and materials* for a period of ONE (1) YEAR . . .." (ECF No. 1 at 9) (emphasis added). The Court finds that Axon is correct.

The "vast weight of authority hold[s] that a workmanship and materials warranty cannot encompass a design defect claim." *Nelson v. Nissan N. Am., Inc.*, No. 11–5712, 2014 WL 7331075, at *3 (D. N.J. Dec. 19, 2014); *see also Troup v. Toyota Motor Corp.*, 545 F. App'x. 668 (9th Cir. 2013) (finding that district court properly dismissed Plaintiff's breach of express warranty claim because the alleged design defect did not fall within Defendant Toyota's warranty against defects in materials and workmanship); *Rollolazo v. BMW of N. Am., LLC*, CV 16-00966 BRO, 2017 WL 6888501, at *9 (C.D. Cal. May 2, 2017) ("[T]his Court finds that Plaintiffs' claims for design defects may not be pursued under an express warranty for materials and workmanship.").

In the Complaint, Richey repeatedly describes the alleged CEW defect as a design defect or flaw. (ECF No. 1 at 9, 11, 12.) Similarly, throughout the Letter, Richey does the same. (*Id.* at 20, 22.)[5] Because "the gravamen of the complaint" is that the CEW safety switch issue was the result of a design flaw, the Court finds that Richey has alleged a design defect claim. *See Troup*, 545 F. App'x. at 669. Because design defects are not

---

[5] The Letter is incorporated by reference. *See supra* Section III.

covered under Axon's Warranty, Richey has failed to state a claim for breach of express warranty. Therefore, the Court dismisses Richey's claim for breach of express warranty.[6]

### 3. Breach of Implied Warranty

Richey counters that his claim under the Act can still proceed because the design defect claim is covered under the implied warranties of merchantability and fitness. (ECF No. 36 at 8; ECF No. 1 at 13.) However, this assertion fails because Axon explicitly disclaimed all implied warranties.

Under the Act, the term implied warranty refers to "implied warranti[es] arising under State law in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). California law provides for implied warranties of merchantability and fitness for the sale of goods. Cal. Com. Code §§ 2314, 2315. It also allows a manufacturer to disclaim these implied warranties. Cal. Com. Code § 2316. However, "[a] company may disclaim the implied warranty of merchantability so long as the disclaimer mentions[s] merchantability and is conspicuous" while "[a]" company may disclaim the implied warranty of fitness as long as the disclaimer is in writing and conspicuous." *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (internal citations omitted).

Axon notes that the Warranty states that "[Axon] specifically disclaims any and all statutory or implied warranties, including without limitation, warranties of merchantability, design, fitness for a particular purpose, arising from a course of dealing, usage or trade practice, warranties against hidden or latent defects . . ."[7] The Warranty clearly disclaims the implied warranties of merchantability and fitness. Thus, Richey may not assert these claims.

---

[6]Richey's Complaint contains brief references to defects in materials and workmanship. (ECF No. 1 at 11, 12.) However, to the extent that Richey has asserted these claims, Richey has provided no factual allegations to support them. As such, Richey has failed to state a claim for these defects as well. *See Troup*, 545 F. App'x. at 669 (internal quotation marks omitted) (finding that a complaint containing only "scattered references to materials" failed to "adequately allege a materials or workmanship defect").

[7]The Warranty is incorporated by reference. *See supra* Section III. Taser, https://buy.taser.com/pages/shipping-and-warranty-information (last visited Jan. 14, 2019).

Richey does not contend that the disclaimer fails to satisfy the requirement of specific and conspicuous language. Instead, Richey alleges that any limitation of implied warranties by Axon is unconscionable under the § 2-302 of the UCC and is unenforceable. (ECF No. 1 at 13.) However, Richey's allegation of unconscionability is threadbare. It contains no factual allegations and resembles a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555). As such, Richey's claim of unconscionability is not plausible. Because Axon has disclaimed all implied warranties, and because Richey does not sufficiently allege unconscionability of those disclaimers, Richey's claims of breach of implied warranty cannot proceed. The Court therefore dismisses them.

### C.    State Law Claims

Axon asserts that the Court should dismiss Richey's state law claims because under choice of law analysis Nevada "has no connection to the alleged tortious conduct" to support claims under Nevada law. (ECF No. 29 at 18.) Richey counters that choice of law analysis is premature at this stage. (ECF No. 36 at 20.) The Court agrees with Axon that Richey's claims must be governed by California law.

Because this is a diversity action filed in the District of Nevada, Nevada's law governs the Court's analysis of the choice of law issue. *See Cleary v. News Corp.*, 30 F.3d 1255, 1265 (9th Cir. 1994) ("A district court in diversity jurisdiction must apply the law of the forum state to determine the choice of law."); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Nevada uses the most significant relationship test from the Restatement (Second) of Conflict of Laws to govern choice of law issues. *See Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cty. of Clark*, 134 P.3d 111, 116 (Nev. 2006); Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971).

Under this test, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles

stated in § 6." Restatement (Second) of Conflict of Laws § 188(1). The factors relevant to deciding which state has the most significant relationship to the issues includes: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* § 188(2). No one factor is dispositive, as each should "be evaluated according to their relative importance with respect to the particular issue." *Id.*

Here, the first three factors weigh heavily in favor of California. Richey alleges that the claims arose in California, that the replacement Pulse model was shipped to his residence in California, and that the product "unintentionally discharged" in California. (ECF No. 29-1 at 4–5.) Accordingly, all of Richey's alleged injuries occurred in California, not Nevada. Factor (d) weighs in favor of Nevada because Richey's CEW is currently located in this district. (ECF No. 1 at 3.) However, factor (e) is split between Nevada and Arizona—while Richey is a resident of Nevada, Axon is an Arizona company. (*Id.* at 2–3.) Because the Court finds that the first three factors substantially outweigh factors (d) and (e), the Court will apply California law to Richey's state law claims.[8] *See Thornell v. Seattle Service Bureau, Inc.*, 742 F. App'x. 189, 193 (9th Cir. 2018) ("[D]etermining which state's law applies is appropriate at the motion to dismiss stage, if the pleaded facts allow it.").

### 1. Fraudulent Omission[9]

California recognizes a cause of action for fraudulent omission. Cal. Com. Code §§ 1572(3), 1710(3). Under California law, the elements of fraudulent omission are:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have

---

[8]Because of the weight of the first three factors, the Court would reach the same conclusion if the factors listed under §§ 145 (general torts) and 148 (fraud and misrepresentation) of the Restatement (Second) of Conflict of Laws were applied.

[9]The pleadings and the motions use both the terms fraudulent omission and fraudulent concealment, but they refer to the same claim. The Court will use fraudulent omission as this is the term Richey used in the Complaint. (*See* ECF No. 1.)

13

been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Boschma v. Home Loan Ctr., Inc.*, 129 Cal. Rptr. 3d 874, 890 (Cal. App. 4 Dist. 2011) (internal quotations omitted). Generally, fraud claims are subject to a heightened pleading standard that requires claims to be pleaded with particularity. *See id.* (internal quotations omitted) ("Fraud must be pleaded with specificity rather than with general and conclusory allegations."). However, because fraudulent omission alleges "a failure to act instead of an affirmative act," fraudulent omission claims "can succeed without the same level of specificity required by a normal fraud claim." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (internal quotations omitted).

Axon asserts that Richey's fraudulent omission claim must be dismissed for two reasons: (1) the claim was not pleaded with particularity; and (2) the Complaint fails to allege the elements of duty to disclose and intent to deceive.

On the issue of particularity, Axon specifically claims that the Complaint only contains conclusory allegations that Axon knew of, but did not disclose, the alleged defect. (ECF No. 29 at 21.) The Court disagrees that the Complaint's allegations are conclusory. Richey alleges that Axon informed him that their "engineers are currently aware of the safety switch activation [issue] and are working on a solution." (ECF No. 1 at 8.) Richey also alleges Axon's user manuals for their devices failed to alert consumers about the alleged defective safety mechanism and that Axon otherwise failed to inform consumers about the alleged defect. (*Id.* at 11.) These specific factual allegations are sufficient to meet the pleading standards of a fraudulent omission claim.[10]

Axon's argument that the Complaint does not adequately allege a duty to disclose and an intent to deceive is also unavailing. First, Axon argues that because the Complaint

---

[10]Axon also argues that Richey cannot allege fraudulent omission because he never purchased any of the models at issue. (ECF No. 29 at 22.) However, as discussed above, Richey has standing to bring claims for the Pulse, X2 and X26P models. *See supra* Section IV.A.2. The Court applies the same analysis here and rejects Axon's argument.

does not allege a "special relationship" between the parties Axon had no duty to disclose the alleged defect. (ECF No. 29 at 23.) Second, Axon states that the Complaint has no factual allegations that Axon intended to conceal the alleged defect to induce Richey to purchase the C2 model.

While the general rule is that fraudulent omission requires "some fiduciary relationship" between the parties, "[t]he duty to disclose may arise without any confidential relationship where the defendant alone has knowledge of material facts which are not accessible to the plaintiff." *Magpali v. Farmers Grp., Inc.*, 55 Cal. Rptr. 2d 225, 232, (Cal. App. 2 Dist. 1996) (internal quotations omitted). Here, Richey alleges that Axon's engineers were aware of the alleged defect, that Axon did not inform consumers of the defect through their user manuals or otherwise, and that consumers could not have reasonably been expected to know about the defect. (ECF No. 1 at 11, 14.) These specific factual allegations adequately plead Axon's knowledge of material facts that were not accessible to Richey. Additionally, these facts support Richey's allegation that Axon intended to induce, and did induce, Richey and other consumers to purchase the allegedly defective products. (*Id.* at 15.) Because Richey has adequately pleaded each of the elements of fraudulent omission under the heightened pleading standard, the Court denies Axon's motion to dismiss Richey's fraudulent omission claim.

### 2.    Unjust Enrichment

The Court will dismiss Richey's unjust enrichment claim. As a quasi-contract claim, unjust enrichment is unavailable when there is an enforceable contract between the parties. *See Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330 (Cal. App. 2 Dist. 2012) (finding that plaintiff could not bring inconsistent pleadings regarding the existence of an enforceable agreement where "their unjust enrichment claim did not deny the existence or enforceability of that agreement"). Here, neither party disputes that Axon's manufacturer's limited warranty is an enforceable contract. Richey is therefore precluded from bringing an unjust enrichment claim. The claim is dismissed with prejudice.

///

### 3. Nevada Deceptive Trade Practices Act

The Court will also dismiss Richey's claims asserted under the NDTPA. Unlike with Richey's other state law claims, California does not have a deceptive trade practices act. While California has laws that may be similar to the NDTPA (*e.g.*, California Unfair Competition Law, CA. Bus. & Prof. § 17200 *et seq.*; California False Advertising Law, CA. Bus. & Prof. § 17500 *et seq.*), it is unclear which law, if any, could apply to Richey's NDTPA claim. In any event, Richey has not alleged violations of those California statutes. As such, the Court dismisses Richey's NDTPA claims.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant Axon Enterprises, Inc's motion to dismiss (ECF No. 29) is granted in part and denied in part as discussed herein. It is granted as to all but Plaintiff's state law fraudulent omission claim.

DATED THIS 29th day of January 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE