CHARLES A. JONES (State Bar No. 6698)
caj@cjoneslawfirm.com
KELLY MCINERNEY (State Bar No. 7443)
kelly@cjoneslawfirm.com
JONES LAW FIRM LLC
9585 Prototype Court, Suite B
Reno, NV 89521
Telephone:    775-853-6440
Facsimile:    775-853-6445

JAMES M. TERRELL (*Pro Hac Vice*)
jterrell@mmlaw.net
J. MATTHEW STEPHENS (*Pro Hac Vice*)
mstephens@mmlaw.net
COURTNEY C. GIPSON (*Pro Hac Vice*)
cgipson@mmlaw.net
METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:    (205) 939-0199
Facsimile:    (205) 939-0399

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**
**RENO DIVISION**

| | |
|---|---|
| **DOUGLAS RICHEY,** on behalf of himself and all others similarly situated, | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) ) |
| **AXON ENTERPRISES, INC.,** formerly d/b/a **TASER INTERNATIONAL, INC.** | ) ) ) ) |
| **Defendant.** | ) ) ) |

**Case No.:  3:19-cv-00192-MMD-CBC**

**PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Douglas Richey, brings this class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure, individually and on behalf of all others similarly situated, against Axon Enterprises, Inc., formerly doing business as Taser International, Inc., and alleges the following:

## INTRODUCTION

1.      This class action seeks damages, injunctive and declaratory relief on behalf of Plaintiff and a class of all persons who purchased or acquired the "Pulse", "X2" or "X26P" model Conducted Electrical Weapon (hereinafter "CEW") manufactured by Defendant Axon Enterprises, Inc., formerly doing business as Taser International, Inc. (hereinafter referred to as "Taser"), during the four years preceding the date of the filing of this putative class action.

2.      Through a common and uniform course of conduct, Taser manufactured, supplied, promoted, and sold the Pulse, X2 and X26P model CEWs when it knew or should have known of a defective safety mechanism which causes the weapons to unintentionally discharge.

3.      Through a common and uniform course of conduct, Taser, acting individually and collectively through its agents and dealers, failed to adequately disclose to the consuming public the fact that its Pulse, X2 and X26P model CEWs had a defective safety mechanism.

4.      Furthermore, through a common and uniform course of conduct, Taser failed to honor both legally mandated and voluntarily offered warranties that would have required it to repair or correct, at no cost to the consuming public, the nonconforming, defective safety mechanisms.

5.      The purpose of this action is to hold accountable and to obtain maximum legal and equitable relief from Taser for producing and placing into the stream of commerce its defective Pulse, X2 and X26P model CEWs.

## JURISDICTION & VENUE

6.      This Court has jurisdiction of this action pursuant to 28 U.S.C § 1332(d), as Plaintiff

Douglas Richey asserts these claims on behalf of a class of all persons in the United States who purchased or acquired a Pulse, X2 and/or X26P model CEW manufactured by Taser, during the four years preceding the date of the filing of this putative class action. The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and Plaintiff Douglas Richey is an adult resident citizen of the State of Nevada and Taser is a citizen of State of Arizona.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C § 1391(b) and (c), because Taser conducts business in Nevada, including Washoe County, and is a resident of and subject to personal jurisdiction in this judicial district, as Taser distributes and sells its products in Washoe County, Nevada.[1]  Moreover, Plaintiff's Taser Pulse model CEW, which is the subject of this action, is located in this judicial district.

## **THE PARTIES**

8.    Plaintiff Douglas Richey (hereinafter "Plaintiff") is an adult consumer residing in Washoe County, Nevada.  Mr. Richey acquired his Taser for personal, family or household purposes.

9.    Defendant Axon Enterprises, Inc., formerly doing business as Taser International, Inc., is a corporation located in Scottsdale, Arizona.

10.    At all times relevant herein, Taser, through its agents, distributors, servants and/or employees, engaged in the design, manufacture, marketing, sale and delivery of its Pulse, X2 and X26P model CEWs nationally and internationally.

## **CLASS ALLEGATIONS**

11.    Plaintiff brings this action pursuant to FED. R. CIV. P. 23 on behalf of himself and all others similarly situated, comprising a Class and Subclass, which are defined as follows:

[1] https://buy.taser.com/pages/taser-retail-directory (last visited 1/31/2020).

a. **Nationwide Class:** All persons and entities in the United States who purchased or owned, not for resale, during the four years preceding the date of the filing of this putative class action through the present, a Pulse X2 or X26P model CEW manufactured by Taser.

b. **California Subclass:** All persons and entities who purchased or acquired in the State of California and during the four years preceding the date of the filing of this putative class action through the present, a Pulse, X2 or X26P model CEW manufactured by Taser.

12.     Plaintiff is a member of the Nationwide Class and the California Subclass.

13.     Excluded from the Class and Subclass are judicial personnel involved in considering the claims herein, all persons and entities with claims for personal injury, all persons in bankruptcy, Defendant Taser, any entities in which Taser has a controlling interest, and all of Taser's legal representatives, heirs and successors.

14.     It is estimated that the Class consists of thousands of persons throughout the continental United States and the Subclass thousands of persons throughout the State of California. In the nine months preceding September 30, 2016 alone, Taser sold 99,604 units of the X26P, X2 and Pulse model CEWs.[2]   Accordingly, the members of the Class and the Subclass are so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. The exact number of Class and Subclass members is presently unknown to Plaintiff, but can easily be self-identified or ascertained from Taser's sales records.

15.     There are numerous questions of law or fact common to the members of the Class and Subclass which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

a.  whether Taser, acting individually or collectively with its agents, failed to conduct appropriate, reasonable and adequate testing of the Pulse, X2 and X26P model CEWs to determine the adequacy of the safety mechanism and its conformity to the reasonable expectations of consumers in the United States and California;

---

[2] Form 10-Q, Taser International, Inc., filed on 11/09/16 for Period Ending 09/30/16.

AMENDED CLASS ACTION COMPLAINT

b.   whether Taser, acting individually or collectively with its agents, failed to warn or otherwise inform Plaintiff and other members of the Class and Subclass of the likelihood of accidental discharge caused by the defective safety mechanism of the Pulse, X2 and X26P model CEWs;

c.   whether Taser failed to adequately disclose and/or affirmatively concealed, in its affirmations and promotional materials, among other things, the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs;

d.   whether Taser's conduct violated California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.*;

e.   whether Taser's conduct constituted unfair, fraudulent or unlawful business practices in violation of California's Unfair Competition Act, CAL. BUS. & PROF. CODE § 17200, *et seq.*;

f.   whether Taser violated the Song-Beverly Consumer Warranty Act by breaching the implied warranty of merchantability, CAL. CIV. CODE § 1790, *et seq.*; and

g.   whether Taser engaged in unfair and unconscionable commercial practices, including the failure to abide by the terms of a written warranty, in connection with warranty assertions.

16.   The claims asserted by the named Plaintiff are typical of the claims of the members of the Class and the Subclass.

17.   This class action satisfies the criteria set forth in FED. R. CIV. P. 23(a) and 23(b)(3) in that Plaintiff is a member of the Class and Subclass; Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass; Plaintiff's interests are coincident with and not antagonistic to those of the Class and Subclass; Plaintiff has retained attorneys experienced in class and complex litigation; and Plaintiff has, through his counsel, access to adequate financial resources to assure that the interests of the Class and Subclass are adequately protected.

18.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.   it is economically impractical for most members of the Class and Subclass to prosecute separate, individual actions; and

b.  after the liability of Taser has been adjudicated, the individual and aggregate damages claims of all members of the Class and Subclass can be determined readily by the Court.

19.     Litigation of separate actions by individual Class and Subclass members would create the risk of inconsistent or varying adjudications with respect to the individual Class and Subclass members which would substantially impair or impede the ability of other Class and Subclass members to protect their interests.

20.     Class certification is also appropriate because Taser has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class and Subclass members.

## FACTUAL BACKGROUND

21.     The preceding paragraphs are incorporated herein by reference as though the same were set forth below at length.

22.     Taser sells Conducted Electrical Weapons ("CEWs") throughout the United States and the world for use in civilian personal self-defense, law enforcement, military, paramilitary and other tactical applications.  In particular, Taser sells three of what it refers to as "citizen" model CEWs that form the basis of the instant lawsuit – the Pulse, X2 and X26P. Taser intentionally designed and shaped these three models to mimic the look and feel of traditional handguns so that consumers familiar with traditional handguns are accustomed to the functionality of the weapon.

23.     Plaintiff originally purchased a "C2" model CEW[3] from Taser for personal self-defense in 2016.  In or around October of 2016, Plaintiff fired the weapon but it malfunctioned when the prongs ejected only one to two feet.

24.     Soon thereafter, Plaintiff contacted customer service at Taser and notified them

---

[33] The C2 model CEW is not the subject of this lawsuit.

AMENDED CLASS ACTION COMPLAINT

about the problem with his C2 unit.

25.     Taser then shipped a Pulse model CEW to Plaintiff at his former home in Corte Madera, California to replace his malfunctioning C2 model.  Taser warranted that the replacement Pulse C2 model would be free of defects in workmanship and materials for a period of one year from the date of receipt.

26.     On January 18, 2017, Plaintiff was carrying the Pulse CEW inside a neoprene case in his right jacket pocket.  It was Plaintiff's custom and habit to carry the weapon with the safety switch in the "safe" position, which he did on this occasion.  Plaintiff had been in his car and as he exited the driver side of the car, he heard a muffled pop and smelled gunpowder.  Plaintiff looked down at his pocket and saw the weapon's electric barbs protruding from his jacket.  The weapon had discharged in Plaintiff's pocket without his pulling the trigger.  Plaintiff ejected the cartridge from the gun and pulled the gun out of his pocket.  The barbs were still stuck in his jacket, and Plaintiff had to rip the jacket pocket to free the barbs.  Luckily, Plaintiff was not personally harmed from the incident.

27.     After inspecting the device, Plaintiff determined the Pulse's safety mechanism had become disengaged, allowing it to misfire.  The safety mechanism can be disengaged with very little pressure and can be armed by moving the safety lever only a fraction of the way to the "Armed" position, which increases the likelihood the safety will be disengaged accidentally.  This risk is exacerbated by the fact that the weapon can be fired with very little pressure applied to the trigger. (*See* Figures 1 and 2 below):

AMENDED CLASS ACTION COMPLAINT

**Figure 1: Showing How the Safety Mechanism Should Function According to the User Manual)**[4]

Safety Switch



**Figure 2: Showing Plaintiff's Actual Pulse CEW as Armed (Indicated by the Green Light) With the Safety Lever Not Even Halfway to the "Armed" Position.**[5]



28.    That same day, on January 18, 2017, Plaintiff contacted the same Taser representative, Jordan Holle, via email to inform him about his Pulse misfiring and inquire about the problem.  In response to this inquiry, Jordan Holle emailed Mr. Richey on January 26, 2017, explaining that "***our engineers are currently aware of the safety switch activation [issue] and are***

_____

[4] Taser Pulse CEW User Manual, p. 4.

[5] Photograph taken by Plaintiff.

AMENDED CLASS ACTION COMPLAINT

working on a solution." (emphasis added).

29.     Mr. Holle offered only to send Plaintiff two barb replacement cartridges in response to Plaintiff's inquiry.  Mr. Holle did not offer to repair or replace Plaintiff's Pulse model CEW with a non-defective safety mechanism that prevented unintentional discharges.

30.     Plaintiff's experience with the Pulse CEW is not atypical. An investigation of Taser X2 and X26P model CEWs[6] published in March 2013 by Canada's Defense Research and Development (DRD) agency found that the Taser devices' "Armed" mode could be entered by starting with the safety lever in the "Safe" position and "moving the [safety] lever up by approximately 40% of the total lever's travel [distance]; hence the Armed mode occupies more of the levers travel range."[7]  The DRD's testing mirrored Plaintiff's experience with the Taser Pulse, in that the safety lever needed only be moved less than halfway (only 40% of the way, according to DRD) to the "Armed" position in order for the device to become armed.

31.     This design flaw can lead to accidental arming or discharge, as the DRD concluded: "the [Taser] levers could be accidentally moved if an object is inadvertently brushed-up against the side of the weapon,"[8] which could lead to "accidental arming or disarming of the weapon."[9]

32.     This design defect poses a risk to the health and welfare of Taser device owners and those around them.  As Taser's own "CEW [Conducted Electrical Weapon] Warnings" state, the static shock administered by a Taser device "[c]an cause death or serious injury."  Thus, many

---

[6] The "X2" and "X26P" model CEWs have the same traditional handgun design as the "Pulse," including the same defective safety mechanism.

[7] Joey R. Bray, *Taser X2 Preliminary Investigation*, DRDC (Mar. 2013), at **10-11, *available at* http://cradpdf.drdc-rddc.gc.ca/PDFS/unc124/p537607_A1b.pdf, last visited on 2/3/2020.

[8] *Id*. at 11.

[9] *Id*. at ii.

AMENDED CLASS ACTION COMPLAINT

possibly dire consequences could result from an ill-timed misfire of a Taser device.

33.     In connection with the purchase and delivery of Taser model CEWs, including the Pulse, X2 and X26P, Taser provides a one-year written warranty containing affirmations of fact as to the absence of defects in materials and workmanship in its CEWs.  In particular, Tasers' affirmations and warranties state as follows:

**TASER International, Inc.'s Warranty, Limitations and Release – Citizen Products**

The following TASER International, Inc. ("TASER") warranty provisions are applicable on all sales or transfers of TASER Citizen Products, including conducted electrical weapons (CEWs). The terms "Purchaser," "your," and "you" mean any purchaser, transferee, possessor, or user of the TASER brand Citizen Products.

**Manufacturer's Limited Warranty**

TASER warrants that its citizen model CEWs (Bolt, Pulse, X26C, M26C, X26P Professional Series, X2 Professional Series, and C2) and cartridges are free from defects in workmanship and materials for a period of ONE (1) YEAR from the date of receipt. Cartridges that are expended are deemed to have operated properly. TASER manufactured accessories, including, but not limited to: batteries and battery packs; battery chargers; carrying cases; cables; and holsters are covered under a limited 90-DAY warranty from the date of receipt. Non-TASER manufactured accessories are covered under the manufacturers' warranty. In the event any country or state imposes a longer express warranty term than that described in this warranty document, then the country or state's term will take precedence.

If a valid warranty claim is received by TASER within the warranty period, TASER agrees to repair or replace the product which TASER determines in its sole discretion to be defective under normal use, as defined in the product instructions. TASER's sole responsibility under this warranty is to either repair or replace with the same or like product, at TASER's option. TASER will undertake the repair, replacement, or refund one time during the warranty period.[10]

34.     On February 22, 2017, counsel for Plaintiff and the putative Class and Subclass sent a letter via certified mail to Taser informing it of the defective safety mechanism in the Pulse, X2 and X26P model CEWs, requesting that Taser comply with its warranties, and notifying Taser

---

[10] Previously available at https://buy.taser.com/warranty/, last visited on 2/28/17.  Current warranty available at https://buy.taser.com/pages/shipping-and-warranty-information?_pos=1&_sid=faca1f986&_ss=r, last visited 1/31/2020.  The main difference appears to be that the current warranty also references the "Pulse+" model.

of its violations of law.  (*See* Pre-Litigation Notice letter dated February 22, 2017, attached hereto as Exhibit 1, and Taser's Response, dated March 28, 2017, attached hereto as Exhibit 2).  To date, however, Taser has failed to comply with its warranties with respect to Plaintiff and with respect to Class and Subclass members.  Among other things, Taser has not repaired or replaced its Pulse, X2 and X26P model CEWs with non-defective safety mechanisms that prevent unintentional discharges.

35.     By letter dated March 28, 2017, Taser acknowledged receipt of the February 22, 2017 letter, but Taser did not commit to provide any meaningful remedy for the defect, did not state that it has taken or will take any actions to identify or notify consumers similarly situated to Plaintiff, and did not commit to ceasing from engaging in the conduct complained of in Plaintiff's letter.  *See* Exhibit 2.  Indeed, in its March 28, 2017 letter, Taser did not even acknowledge the safety mechanism defect, but instead falsely blamed static electricity as the culprit.  *See id.*

36.     Taser's unilateral limitation of warranty also has caused a failure of the essential purpose of the warranty, as the term is used in the Uniform Commercial Code, because Taser has failed to repair or replace the defective safety mechanisms with non-defective, conforming safety mechanisms.

37.     Taser failed to disclose at the time it marketed, warranted, sold or delivered the Pulse, X2 and X26P model CEWs that these weapons had defective safety mechanisms that caused unintentional discharges, as described throughout this Amended Complaint.

38.     At all relevant times, Plaintiff and other members of the Class and Subclass were, and continue to be, misinformed, misled and deceived by Taser with respect to the safety and functionality of the Pulse, X2 and X26P model CEWs in light of the reasonable expectations for safety and functionality of these weapons among the consuming public.

AMENDED CLASS ACTION COMPLAINT

39.     At all relevant times, Taser controlled the design, manufacture, marketing, and sale of the Pulse, X2 and X26P model CEWs.

40.     The User Manuals provided to consumers during the period relevant to this Amended Complaint were wholly inadequate to alert Plaintiff and the Class and Subclass to the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs.

41.     Taser has not adequately informed the Class and Subclass about the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs, despite knowing about the defective nature of these CEWs.

42.     Taser knew, or should have known, that the design, materials and workmanship utilized for the Pulse, X2 and X26P model CEWs were insufficient to prevent unintentional discharges.

43.     At all times relevant to the claims herein, Taser failed to conduct adequate testing and research regarding the safety mechanism for the Pulse, X2 and X26P model CEWs.  Not only did Taser fail to engage in adequate pre-market testing, but after introducing the Pulse, X2 and X26P model CEWs in the marketplace, Taser continued to fail to fulfill its ongoing obligation to fully disclose the results of this testing and research regarding the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs.

44.     The Pulse, X2 and X26P model CEWs were delivered with standard future performance warranties.  Here, Class and Subclass members exercising due diligence were unable to discover the nonconformity of the safety mechanism because Taser did not disclose the problem with the defective safety mechanism when customers received the Pulse, X2 and X26P model CEWs.

45.     By its affirmations, representations and nondisclosures, Taser portrayed and

warranted the Pulse, X2 and X26P model CEWs as safe and functional.  Taser failed to deliver the Pulse, X2 and X26P model CEWs having these characteristics, as the Pulse, X2 and X26P model CEWs lacked the design, materials and workmanship necessary to meet the minimum safety and functionality characteristics reasonably expected by ordinary consumers in the United States.

46.     Taser also breached its implied warranties, as among other reasons discussed in Count II, it did not deliver the Pulse, X2 and X26P model CEWs having the characteristics, uses and benefits portrayed by Taser.

**COUNT I**
**FRAUDULENT OMISSION**
**(On Behalf of the Nationwide Class and California Subclass)**

47.     The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

48.     Plaintiff brings this count individually and on behalf of the members of the Nationwide Class and California Subclass.

49.     Taser was aware of the CEWs' defect when it marketed and sold the CEWs to Plaintiff and members of the Nationwide Class and California Subclass.

50.     Having been aware of the CEWs' defect, and having known that Plaintiff and the other members of the Class and Subclass could not have reasonably been expected to know of the defect, Taser had a duty to disclose the defect to Plaintiff and the Class and Subclass members in connection with the sale of the CEWs.

51.     Taser did not disclose the defect to Plaintiff and the Class and Subclass members.

52.     The defect comprises material information with respect to the sale of the CEWs.

53.     In purchasing the CEWs, Plaintiff and the Class and Subclass members reasonably relied on Taser to disclose known material defects.

AMENDED CLASS ACTION COMPLAINT

54.     Had Plaintiff and the Class and Subclass members known of the CEWs' defect they would not have purchased or would have paid less for the CEWs.

55.     Through its omissions regarding the CEWs' defect, Taser intended to induce, and did induce, Plaintiff and the Class and Subclass members to purchase a CEW that they otherwise would not have purchased, or pay more for a CEW than they otherwise would have paid.

56.     As a direct and proximate result of Taser's omissions, Plaintiff and the Class and Subclass members either overpaid for the CEWs or would not have purchased the CEWs at all had the defect been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT II
### VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY
### CAL. CIV. CODE § 1790, *et seq.*
### (Brought on behalf of the California Subclass)

57.     The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

58.     Plaintiff brings this count individually and on behalf of the members of the California Subclass.

59.     Plaintiff and members of the California Subclass are "buyers" within the meaning of CAL. CIV. CODE § 1791.

60.     The CEWs are "consumer goods" within the meaning of CAL. CIV. CODE § 1791.

61.     Taser is a "manufacturer" of the CEWs within the meaning of CAL. CIV. CODE § 1791.

62.     Taser impliedly warranted to Plaintiff and the California Subclass members that the CEWs were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) and 1792.

63.     CAL. CIV. CODE § 1791.1 states that: "Implied warranty of merchantability" or

"implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

>(1) Pass without objection in the trade under the contract description;

>(2) Are fit for the ordinary purpose for which such goods are used;

>(3) Are adequately contained, packaged, and labeled; and

>(4) Conform to the promises of affirmations of fact made on the container or label.

64.    The CEWs would not pass without objection because they share a common design defect in that they are prone to firing with the safety mechanism engaged.

65.    Because of the defect, the CEWs are not fit for their ordinary purpose.

66.    The CEWs were not adequately labeled because the labeling failed to disclose the defects described herein.

67.    Taser did not deliver the Pulse, X2 and X26P model CEWs having the characteristics, uses and benefits portrayed by Taser.

68.    Plaintiff notified Taser of the defect in the CEWs and its corresponding breach of warranty, through a notice letter dated February 22, 2017.  *See* Exhibit 1.

69.    Plaintiff and the California Subclass members bought CEWs manufactured by Taser.

70.    The CEWs share a common design defect in that they can fire when the safety mechanism is engaged.

71.    Taser has had the opportunity to cure the defect in the CEWs, but has chosen not to do so.  Giving Taser a chance to cure the defect is not practicable in this case and would serve only to delay this litigation, and is thus unnecessary.

72.    As a result of Taser's breach of its implied warranty, Plaintiff and the California

Subclass members received goods with substantially impaired value. Plaintiff and the California Subclass members have been damaged as a result of the diminished value of the CEWs resulting from the defect described herein.

73.     Pursuant to CAL. CIV. CODE §§ 1791.1(d) and 1794, Plaintiff and the California Subclass members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their CEWs, or the overpayment or diminution in value of their CEWs.

74.     Pursuant to CAL. CIV. CODE § 1794, Plaintiff and the California Subclass members are entitled to costs and attorneys' fees.

**COUNT III**
**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**
**(On Behalf of the California Subclass)**

75.     The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

76.     Plaintiff brings this count individually and on behalf of the members of the California Subclass.

77.     Plaintiff and the other members of the California Subclass were deceived by Taser's failure to disclose that the CEWs share a common design defect in that they discharge when the safety mechanism is in place.

78.     Taser engaged in unfair or deceptive acts or practices when, in the course of its business, it knowingly omitted material facts as to the characteristics and qualities of the CEWs.

79.     Taser failed to disclose material information concerning the CEWs that it had a duty to disclose. Taser had a duty to disclose the safety mechanism defect because: (a) it was aware of the defect; (b) it had exclusive knowledge of the defect; (c) it actively concealed material facts concerning the defect from the general public, Plaintiff and the California Subclass members.

As detailed above, the information concerning the defect was known to Taser at the time of advertising and selling the defective CEWs, all of which was intended to induce consumers to purchase CEWs.

80.     Taser intended for Plaintiff and the California Subclass members to rely on it to provide adequately designed and manufactured CEWs, and to honestly and accurately reveal the problems described herein.

81.     Taser intentionally failed or refused to disclose the defect to consumers.

82.     Taser's deceptive omissions were intended to induce Plaintiff and the California Subclass members to believe that the CEWs were adequately designed and manufactured.

83.     Taser's conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act.

84.     Plaintiff and the other members of the California Subclass have suffered injury in fact and actual damages resulting from Taser's material omissions because they paid inflated purchase prices for the CEWs.   Plaintiff and the California Subclass members are entitled to recover actual damages, punitive damages, costs and attorneys' fees, and all other relief that the Court deems proper under California Civil Code § 1780.

85.     In accordance with California Civil Code § 1782, Plaintiff's Counsel sent a certified letter to Taser on February 22, 2017, notifying Taser of its §1770 violations.  *See* Exhibit 1. Pursuant to § 1782 of the Act, Taser is hereby on notice of its particular § 1770 violations, and Plaintiff demands that Taser rectify the problems associated with the actions described herein and give notice to all affected consumers.

86.     By letter dated March 28, 2017, Taser acknowledged receipt of the February 22, 2017 letter, but Taser did not commit to provide any meaningful remedy for the defect, did not

state that it has taken or will take any actions to identify or notify consumers similarly situated to Plaintiff, and did not commit to ceasing from engaging in the conduct complained of in Plaintiff's letter.  *See* Exhibit 2.  Indeed, in its March 28, 2017 letter, Taser did not even acknowledge the safety mechanism defect, but instead falsely blamed static electricity as the culprit.  *See id.*

87.     Pursuant to California Civil Code § 1780(d), attached hereto as <u>Exhibit 3</u> is the affidavit showing that this action has been commenced in the proper forum.

**<u>COUNT IV</u>**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
**(On Behalf of the California Subclass)**

88.     The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

89.     Plaintiff brings this count individually and on behalf of the members of the California Subclass.

90.     California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business acts or practices."

91.     Taser's conduct violated multiple statutes and the common law, as alleged herein.

92.     Taser has violated § 17200 by knowingly selling CEWs that include the defect and omitting mention of this defect to consumers.

93.     Taser was aware of the CEWs' defect when it marketed and sold the CEWs to Plaintiff and members of the California Subclass.

94.     Having been aware of the CEWs' defect, and having known that Plaintiff and the other members of the California Subclass could not have reasonably been expected to know of the defect, Taser had a duty to disclose the defect to Plaintiff and the California Subclass members in connection with the sale of the CEWs.

18
AMENDED CLASS ACTION COMPLAINT

95.     Taser's conduct was unscrupulous, offended established public policy, and was fraudulent.

96.     The harm caused by Taser's conduct greatly outweighs any benefit to consumers.

97.     Plaintiff relied on the omissions of Taser with respect to the quality and reliability of the CEWs.  Plaintiff and the California Subclass members would not have purchased the CEWs and/or paid as much for them, but for Taser's omissions.

98.     Taser concealed and failed to disclose material information about the CEWs in a manner that is likely to, and in fact did, deceive consumers and the public.

99.     Through its omissions regarding the CEWs' defect, Taser intended to induce, and did induce, Plaintiff and the California Subclass members to purchase a CEW that they otherwise would not have purchased, or pay more for a CEW than they otherwise would have paid.

100.     All of the wrongful conduct alleged herein occurred in the conduct of Taser's business.

101.     Plaintiff, individually and on behalf of the California Subclass members, requests that this Court restore to Plaintiff and the California Subclass members any money acquired by unfair competition, including restitution.

<u>**JURY DEMAND**</u>

Plaintiff hereby demands trial by jury of all issues properly triable thereby.


Respectfully submitted,


Dated: February 12, 2020                JONES LAW FIRM LLC


By:      _____/s/ Charles A. Jones_____
              CHARLES A. JONES (State Bar No. 6698)

AMENDED CLASS ACTION COMPLAINT

caj@cjoneslawfirm.com
KELLY MCINERNEY (State Bar No. 7443)
Kelly@cjoneslawfirm.com
JONES LAW FIRM LLC
9585 Prototype Court, Suite B
Reno, NV 89521
Telephone:     775-853-6440
Facsimile:     775-853-6445

*Attorneys for Plaintiff and the Proposed Class*


J. Matthew Stephens
(*Pro Hac Vice*)
James M. Terrell
(*Pro Hac Vice*)
Courtney C. Gipson
(*Pro Hac Vice*)
METHVIN, TERRELL, YANCEY,
STEPHENS & MILLER, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:     (205) 939-0199
Facsimile:     (205) 939-0399
mstephens@mmlaw.net
jterrell@mmlaw.net
cgipson@mmlaw.net

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the law office of Jones Law Firm and that on this 12th day of February, 2020, I e-filed a true and correct copy of the foregoing *Plaintiff's Amended Class Action Complaint* with the Clerk of the Court through the Court's CM/ECF electronic filing system and notice will be sent electronically to the following:

KRISTEN L. MARTINI, ESQ.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, NV 89501
Tel: 775.823.2900
Fax: 775.823.2929
kmartini@lrrc.com

J. CHRISTOPHER JORGENSEN
BRIAN DOUGLAS BLAKELY
ADRIENNE BRANTLEY-LOMELI, ESQ.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy., Ste 600
Las Vegas, NV 89169
Tel: 702-474-8200
cjorgensen@lrrc.com
BBlakley@lrrc.com
abrantley-lomeli@lrrc.com

PAMELA B. PETERSEN, ESQ.
AMY L. NGUYEN, ESQ. (*Pro Hac*)
AXON ENTERPRISE, INC.
17800 N. 85th Street
Scottsdale, AZ 85255
Tel: 623.326.6016
Fax: 480.905.2027
ppetersen@axon.com
amynguyen@axon.com
legal@axon.com

*Attorneys for Defendant Axon Enterprise, Inc.*

/s/      *Belinda Watson*
Belinda Watson

AMENDED CLASS ACTION COMPLAINT

## INDEX OF EXHIBITS

| Exhibit | Description | Number of Pages |
|---------|-------------|-----------------|
| 1 | Pre-Litigation Notice Letter, Feb. 22, 2017 | 7 |
| 2 | Taser's Response to Pre-Litigation Notice Letter, March 28, 2017 | 11 |
| 3 | Declaration of Douglas Richey | 3 |

AMENDED CLASS ACTION COMPLAINT