CHARLES A. JONES (State Bar No. 6698)
caj@cjoneslawfirm.com
KELLY MCINERNEY (State Bar No. 7443)
kelly@cjoneslawfirm.com
JONES LAW FIRM LLC
9585 Prototype Court, Suite B
Reno, NV 89521
Telephone:     775-853-6440
Facsimile:     775-853-6445

JAMES M. TERRELL (*Pro Hac Vice*)
jterrell@mmlaw.net
J. MATTHEW STEPHENS (*Pro Hac Vice*)
mstephens@mmlaw.net
COURTNEY C. GIPSON (*Pro Hac Vice*)
cgipson@mmlaw.net
METHVIN, TERRELL, YANCEY, STEPHENS & MILLER, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:     (205) 939-0199
Facsimile:     (205) 939-0399

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
RENO DIVISION**

| | |
|---|---|
| **DOUGLAS RICHEY,** on behalf of himself and all others similarly situated, <br><br> **Plaintiff,** <br><br> v. <br><br> **AXON ENTERPRISES, INC.,** formerly d/b/a **TASER INTERNATIONAL, INC.** <br><br> **Defendant.** | **Case No.:  3:19-cv-00192-MMD-CBC** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO RULE 23(d)(1)(D)** |

## MEMORANDUM OF POINTS AND AUTHORITIES

## <u>INTRODUCTION</u>

Striking class allegations before a motion for class certification or discovery is extremely rare.  Instead, this District favors pre-certification discovery to resolve factual issues related to the maintenance of a class action.  Here, discovery is not only necessary for the purpose of determining whether the class action is maintainable, but it is also crucial to make sense of Defendant's Motion to Strike.  Defendant argues that Plaintiff's proposed class of X2 and X26P purchasers inappropriately includes federal, state, and local law enforcement agencies.  Yet, even assuming that Defendant is correct that Plaintiff cannot represent law enforcement agencies, a class could still be certified consisting of "individual acquirers" of the CEWs at issue (the X2 and X26P models) in light of Defendant's own website representations that these models were sold to the general public.  At a minimum, discovery is required to determine: (1) how many individuals (as opposed to law enforcement agencies) acquired the X2 and X26P model CEWs for numerosity purposes; (2) the similarity of the X2 and X26P to the Pulse; and (3) the representations and omissions made to both individual acquirers and law enforcement agencies regarding the safety defect in the CEWs (and the similarities between those representations and omissions to each group for purposes of predominance).

At the center of Defendant's argument is its suggestion that the X2 and X26P model CEWs were sold primarily to law enforcement agencies.  Not only does this argument conflict with the allegations in the Second Amended Complaint, which must be accepted as true at this stage, but, more importantly, it also is contradicted by Defendant's own website representations, which make clear that Defendant markets the X2 and X26P model CEWs to **both** individual acquirers (or "civilians") and law enforcement.  When asked what the difference was between a

civilian and a law enforcement model, Defendant's website explained that the models are "**100% identical**" to each other.  Help Center, TASER, *available at* https://buy.taser.com/apps/help-center#!whats-the-difference-between-the-civilian-x2-and-the-law-enforcement-x2   and   https://buy.taser.com/apps/help-center#!whats-the-difference-between-the-civilian-x26p-and-the-law-enforcement-x26p (last visited May 28, 2020) (emphasis added), attached hereto as Exhibit A.  The only exception, according to Defendant, is the "length of the cartridge that is available to consumers." *Id.*  Similarly, Defendant markets the  X2  to "everyday civilians who are looking to strengthen their home or personal protection plans," Taser X2 Professional Series, TASER, https://buy.taser.com/products/x2-professional-series?_pos=7&_sid=fb223371c&_ss=r         (last visited May 28, 2020), attached hereto as Exhibit B, and the X26P is offered to individuals as "a strong addition to any civilian self-protection plan," Taser X26P Professional Series, TASER, https://buy.taser.com/products/taser-x26p-professional-series  (last  visited  May  28,  2020), attached hereto as Exhibit C.  Because of these representations, Defendant's request for a premature denial of class certification based on the X2 and X26P being sold primarily to law enforcement should be rejected as it belies all common sense that these models were not also sold to and acquired by everyday individuals.

Moreover, Defendant's primary argument that Plaintiff cannot represent law enforcement agencies is based on an unsettled area of the law that should be decided after discovery at the class certification stage.  Defendant's argument also further sheds light on numerous ways in which discovery is crucial in this case before a decision on class certification.  While Defendant argues on the one hand that law enforcement agencies were the primary purchasers of the X2 and X26P CEWs, it also confusingly suggests that federal agencies, such as the "U.S. Forest Service" may have acquired these products.  *See* (ECF No. 61 at p. 21).  In addition, even assuming that

one division of the government cannot be represented in a class, such as states arguing Eleventh Amendment immunity, other divisions, such as local governments, may not have such restrictions.  In fact, the California Department of Justice has a policy that local governments are primarily responsible for actions involving law enforcement agencies, and Defendant's own case law recognizes that local and municipal governments may serve as class representatives.  Thus, just as discovery is important for understanding who acquired the X2 and X26P model CEWs (individuals versus law enforcement agencies), it is also valuable for determining which divisions of government (federal, state, or local) acquired the products.

Finally, this Court already found that Plaintiff has standing under the "substantial similarity test" to represent putative class members who purchased or acquired not only the Pulse but also the X2 and X26P models. (ECF No. 49 at p. 8).  In doing so, this Court held the Complaint sufficiently alleged that the three models are substantially similar.  *See* (*id.*).  As a result, Plaintiff should be entitled to conduct discovery relating to the similarities between the three models at issue.

In sum, regardless of the merits of Defendant's legal argument, the class definition should not be modified at this early stage until the parties have been afforded an opportunity to present factual evidence to support their positions, i.e. who actually purchased the X2 and X26P CEWs.  While the parties have begun exchanging written discovery, Defendant has not produced a single document or responded to any of Plaintiff's interrogatory requests, which were both served by Plaintiff on March 11, 2020.  At a minimum, even assuming that Defendant's legal argument is correct, a point that Plaintiff does not concede, a class could still be certified of the individuals who acquired the X2 and X26P model CEWs.  Without any discovery, however, we will never know how many of those individual acquirers exist.

## **FACTUAL BACKGROUND**

Plaintiff Douglas Richey seeks to represent a class of persons who purchased or acquired a "Pulse," "X2," or "X26P" model Conducted Electrical Weapon ("CEW") manufactured by the Defendant.  *See* (ECF No. 70 at ¶ 11).  These CEWs are sold for use in civilian personal self-defense, law enforcement, military, paramilitary and other tactical applications.  *See* (*id.* at ¶ 22).  In particular, Defendant sells three of what it refers to as "citizen" model CEWs that form the basis of the instant lawsuit – the Pulse, X2, and X26P.  *See* (*id.*).  Plaintiff acquired a Pulse model CEW from Defendant as a replacement after the CEW he had originally purchased malfunctioned.  *See* (*id.* at ¶¶ 23–25).  The malfunction resulted in the prongs ejecting only one to two feet when fired. *See* (*id.* at ¶ 23).

Shortly after acquiring the Pulse, Plaintiff experienced another, more dangerous, malfunction.  Plaintiff was carrying the Pulse inside a neoprene case in his jacket pocket.  *See* (*id.* at ¶ 26).  The Pulse had the safety switch in the "safe" position, but the weapon discharged.  *See* (*id.*).  Plaintiff inspected the device and determined that the Pulse's safety mechanism had become disengaged, thus arming the device, allowing it to misfire.  *See* (*id.* at ¶ 27).  An investigation published in March 2013 by Canada's Defense Research and Development of Defendant's X2 and X26P models reveals that Plaintiff's experience was not atypical.  *See* (*id.* at ¶ 30).  While this article focused on the use of these models by law enforcement agencies, Defendant markets an X2 and X26P model for both civilians and law enforcement that is "100% identical" except for the length of the cartridge that is available to the consumer.  *See* Exhibit A at pp. 2–3.

This Court previously granted in part and denied in part Defendant's Motion to Dismiss.  *See* (ECF No. 49).  Notably, in that ruling, this Court found that Plaintiff has standing under the

"substantial similarity test" to represent putative class members who purchased or acquired not only the Pulse but also the X2 and X26P models.  (*Id.* at p. 8).  After that ruling, Plaintiff amended his Complaint to assert claims under California state law.  *See* (ECF No. 54).  Following the filing of Defendant's Motion to Strike Class Allegations (ECF No. 61) and its corresponding Motion for Limited Stay of Class-Action Discovery (ECF No. 64), Plaintiff further amended his Complaint to remove the nationwide class allegations and allege two separate California classes for a four- and three-year statute of limitations, (ECF No. 70 at ¶ 11).  In his Second Amended Complaint, Plaintiff alleges that Defendant failed to disclose the defective safety mechanisms, misled putative class members about the safety of its products, and warranted the products as being safe and functional. *See* (ECF. No. 70).  This case is currently in the initial discovery phase.  The parties have begun exchanging written discovery and engaging in productive discussions regarding such discovery.  To date, Defendant has not produced a single document in response to Plaintiff's Document Requests served on March 11, 2020.  Nor has Defendant responded to any of Plaintiff's Interrogatory requests served on the same day.

## **LEGAL STANDARD**

Defendant brings its Motion to Strike pursuant to FED. R. CIV. P. 23.  Rule 23(d)(1)(D) states, in relevant part, that the court may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  While this Court has the discretion to strike allegations, "motions to strike are generally disfavored because a motion for class certification is considered to be a more appropriate vehicle for arguments pertaining to the class allegations." *See John v. Mazo*, No. 216CV00239APGPAL, 2016 WL 4497755, at *2 (D. Nev. Aug. 25, 2016).

1

2

3

4

5

6

7

8

9

10

Defendant also suggests that the claims should be stricken pursuant FED. R. CIV. P. 12(f). However, "recent district courts have stated that Rule 12(f) motions to strike are not the proper vehicle for seeking dismissal of class allegations." *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C–13–1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. March 14, 2014). Rule 12(f) sets a very specific standard for motions to strike. It states that a Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); *see Ahmed v. HSBC Bank USA, Nat'l Assoc.*, No. ED CV 15-2057 FMO (SPx), 2017 WL 5765734, at *1 (C.D. Cal. Nov. 6, 2017) (defining "redundant", "immaterial", "impertinent", and "scandalous").

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

When ruling on a motion to strike, the court takes the "plaintiffs' allegations as true and must liberally construe the complaint in the light most favorable to the plaintiffs." *See Mazo*, 2016 WL 4497755, at *1; *see also Snyder v. TAMKO Bldg. Prod., Inc.*, No. 115CV01892TLNKJN, 2018 WL 3241805, at *1 (E.D. Cal. July 2, 2018) ("[W]hen ruling on a motion to strike, the Court takes the plaintiff's allegations as true," "view[s] the pleading in the light most favorable to the nonmoving party," and resolves any doubts as to "whether the portion to be stricken might bear on an issue in the litigation" in favor of denial.). Such motions "'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Kastroll v. Wynn Resorts, Ltd.*, No. CASE209-CV-02034-LDG, 2010 WL 3829398, at *2 (D. Nev. Sept. 23, 2010) (quoting *Collins v. Gamestop Corp.*, No. C10-1210 TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010)); *Mazo*, 2016 WL 4497755, at *2 (same); *see generally Simpson v. Ramada Worldwide, Inc.,* No. 12-CV-5029-PSG, 2012 WL 5988644, at *2 (N.D. Cal. Nov. 29, 2012) ("[L]ike Rule 12(f) motions, Rule 23(d)(1)(D) motions should be granted only when the complaint has obvious

27

28

1    defects that cannot be cured through the class discovery and class certification process.").  As

2    discussed in depth below, Defendant's Motion should be denied as premature.

**ARGUMENT**

**I.**    **Defendant's Motion to Strike Plaintiff's Class Allegations Is Premature.**

Citing numerous cases from outside of the Ninth Circuit entirely, Defendant suggests that it is common to strike class allegations prior to conduction of any discovery, thereby effectively ruling on class certification, before any discovery is conducted.  Yet, this "should not be the norm."  1 MCLAUGHLIN ON CLASS ACTIONS § 3:4 (15th ed.); *see also Brazil v. Dell Inc.*, No. C–07–01700 RMW, 2008 WL 4912050, at *3 (N.D. Cal. Nov. 14, 2008) ("[D]ismissal [of class actions] at the pleading stage is unusual.").  Courts do not routinely strike class allegations before a motion for class certification is filed or discovery conducted.  *See John Hastings, et al. v. Triumph Prop. Mgmt. Corp.*, No. 216CV00213JADPAL, 2017 WL 388809, at *3 (D. Nev. Jan. 26, 2017).

Defendant cites to Rule 23(c)(1)(A) to remind the court that a certification decision must be made "[a]t an early practicable time."  Defendant does not mention, however, that this language was added to the Rule to replace the phrase, "as soon as practicable," which the advisory committee found did not "reflect[] prevailing practice nor capture[] the many valid reasons that may justify deferring the initial certification decision."  *See* FED. R. CIV. P. 23(c)(1)(A) (Advisory Committee Notes, 2003 Amendment).  One reason for deferring that decision is the time "needed to gather information necessary to make the certification decision."  *See id.*; 1 MCLAUGHLIN ON CLASS ACTIONS § 3:4 (15th ed.) ("Although the determination whether a case should be certified as a class action must be made at an early practicable time, in most cases discovery must be permitted on matters necessary to resolve the class certification

question.").  Consequently, "[i]f the viability of a class depends on factual matters that must be developed through discovery, a motion to strike will be denied pending the full-blown certification motion."  1 MCLAUGHLIN ON CLASS ACTIONS § 3:4 (15th ed.).

In considering a motion to strike where no discovery had commenced, the District of Nevada observed:

> The "better and more advisable practice" for district courts on pre-certification discovery "is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." . . . Therefore, discovery is warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action[.]

*John v. Mazo*, No. 216CV00239APGPAL, 2016 WL 4497755, at *2 (D. Nev. Aug. 25, 2016) (internal citations omitted).  Despite noting that it appeared the case "may not be suitable for class certification," the court in *Mazo* concluded that a decision on the merits of any purported class was premature without appropriate discovery.  *See id.*

In this case, the parties are in the initial stages of discovery.  No documents have been produced nor has Defendant responded to Plaintiff's Interrogatories.  Discovery is needed to, among other things, determine how many individuals (as opposed to law enforcement agencies) acquired the X2 and X26P model CEWs for numerosity purposes; the similarity of the X2 and X26P to the Pulse, *see* (ECF No. 49 at p. 8); the representations and omissions made to individual acquirers and law enforcement agencies regarding the safety defect of the CEWs (and the similarities between those representations and omissions to each group for purposes of predominance); and which divisions of government (federal, state, and local) acquired the X2 and X26P model CEWs.  As noted above, this Court has already found that Plaintiff has standing under the "substantial similarity test" to represent putative class members who purchased or

acquired not only the Pulse but also the X2 and X26P models, (ECF No. 49 at p. 8), and consistent with that ruling, Plaintiff should be entitled to conduct discovery relating to the similarities between the three models at issue.  At this stage, without adequate discovery on the X2 and X26P models, Plaintiff will be unable to challenge Defendant's arguments – arguments which are undermined by its very own website and, when taken as true, the allegations in the Second Amended Complaint.

  **A.**  **Defendant's website markets two versions of the X2 and X26P model CEWs – a civilian model and a Law Enforcement model – which are, with only one minor difference, "100% identical."**

  Defendant argues that Plaintiff's class allegations as to the X2 and X26P models should be struck because Plaintiff cannot represent law enforcement agencies.  Under Defendant's argument, Plaintiff can only represent a class of purchasers of the Pulse model CEW.  Yet, its argument is belied by its own website in which Defendant represents that there are **two versions** of the X2 and X26P CEWs: a civilian model and a Law Enforcement model.  When asked what the difference is between the two, Defendant replied: "Other than the length of the cartridge that is available to consumers, the consumer X2 is 100% identical to the Law Enforcement grade X2." *See* Exhibit A at p.2.  It made the same statement for the X26P.  *See id.* at p.3.

  The online description of the models also makes clear that they are for both civilians and law enforcement:

> The TASER X2 provides double the capability you expect from a TASER self-defense device, as it comes fully-equipped with an immediately available back-up shot. Designed by law enforcement, for law enforcement, **the X2 is legal for everyday civilians who are looking to strengthen their home or personal protection plans.** This tool is perfect for professionals looking for added defense on the job, including security and process servers.

*See* Exhibit B at p.4.[1]

Similarly, the X26P is marketed to consumers as a product trusted by law enforcement but available for "civilian self-protection":

> **The X26P is a strong addition to any civilian self-protection plan.** It is the same innovative tool used and trusted by law enforcement agencies around the world. This means it can be effective against even the most aggressive assailants, or persons under the influence of drugs and/or alcohol. **Equipped with a durable holster and rugged carrying case, the X26P is suited for both home-defense and professionals such as security personnel or delivery drivers.**

*See* Exhibit C at p.5.[2]

Clearly, the X2 and X26P were marketed and sold to law enforcement agencies and individual civilians.  Thus, even assuming that Defendant's legal argument is correct and Plaintiff cannot represent law enforcement agencies, discovery is necessary to determine how many individual civilians acquired an X2 or X26P model.  At the very least, this information is critical for numerosity purposes (and Defendant has offered no other basis for why a class of individual acquirers of the X2 and X26P CEWs could not be certified).  Without discovery on the X2 and X26P models, Plaintiff will be unable to challenge the arguments made in Defendant's Motion to Strike as it regards these models.  *See John v. Mazo*, No. 216CV00239APGPAL, 2016 WL 4497755, at *2 (D. Nev. Aug. 25, 2016).

---

[1] For consistency, the language quoted herein is the same as that quoted in the recent Opposition to the Motion to Stay.  *See* (ECF No. 65 at pp. 8–9).  The website as of May 25, 2020 has slightly different language, but the changes appear inconsequential.  For this Court's reference, Plaintiff attaches a version of the website as it reads today (Exhibit B at pp. 2–3) as well as the most recent version provided by the internet archive website, "Wayback Machine" (https://archive.org/) and dated July 17, 2018 (Exhibit B at pp. 4–5).

[2] As noted in footnote 1, there have been some minor changes to this language.  For example, the sentence stating that the X26P can be "effective against the most aggressive assailants" has been removed.  *See* Exhibit C at p.2.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.      At this stage, the allegations in the Second Amended Complaint must be taken as true, which reference civilian model X2 and X26P CEWs and broadly define the classes to include those who purchased or acquired the CEWs at issue.**

Defendant's argument that Plaintiff cannot represent purchasers of the X2 and X26P CEWs also contradicts the allegations in the Second Amended Complaint, which at this stage must be taken as true.  *See Mazo*, 2016 WL 4497755, at *1; *see generally Simpson v. Ramada Worldwide, Inc.,* No. 12-CV-5029-PSG, 2012 WL 5988644, at *3 (N.D. Cal. Nov. 29, 2012) ("At this stage, Plaintiff's complaint is not so obviously flawed as to require striking the class allegations.").  For example (and consistent with Defendant's website), Plaintiff alleges that "TASER sells three of what it refers to as 'citizen' model CEWs that form the basis of the instant lawsuit – the Pulse, X2 and X26P."  *See* (ECF No. 70 at ¶ 22).  Rather than take the allegations as true and consider the representations on its website, Defendant asks this Court to blindly accept its arguments without any evidence other than the article cited in Plaintiff's Second Amended Complaint, which analyzed the use of the X2 and X26P by law enforcement.  *See* (*id.* at ¶ 30).  To argue that based on this article, only law enforcement agencies purchased or used the X2 and X26P models ignores the very existence of a civilian version of the X2 and X26P – which, as Defendant itself describes, is "100% identical to" the law enforcement model.  *See* Exhibit A at pp. 2–3.

To date, Defendant has not produced any discovery or information related to whether the X2 and X26P models are "law-enforcement only devices."  Nor has Defendant submitted a declaration supporting this argument.  To be clear, Defendant's initial disclosures offer no guidance whatsoever on this issue as they merely list categories of documents limited only to the Pulse model.  Discovery is necessary to test Defendant's allegation regardless of whether

1

2

Defendant is legally correct that Plaintiff cannot represent a class of municipalities, governments, law enforcement entities, etc.

3

4

5

6

7

8

9

10

11

12

13

14

15

For example, both classes are defined as "[a]ll persons and entities who **purchased or acquired** in the State of California . . . a Pulse, X2 or X26P model CEW manufactured by TASER." *See* (ECF No. 70 at ¶ 11) (emphasis added).  Yet, in its Motion, Defendant focuses on an intended use of the X2 and X26P for law enforcement personnel.  Defendant does not concede that the X2 and X26P models were acquired or even owned *only* by law-enforcement officials but simply argues without any supporting evidence whatsoever that "the vast *majority* of these law enforcement devices are *sold to* federal, state, and local law enforcement agencies, not individual consumers." *See* (ECF No. 61 at p. 5) (emphasis added); *see also* (ECF No. 64 at p. 4) (emphasis added) ("The *overwhelming majority* of these models are *owned* by federal, state, and local law enforcement agencies . . .").  By definition, the class includes former and non-law enforcement personnel who acquired the X2 and X26P models.

16

17

18

19

20

21

22

23

24

25

26

In sum, the pleadings alone do not make clear that a class action cannot be maintained. At the very least, discovery is imperative to shed light on who purchased and acquired the X2 and X26P models.  On facts such as these, motions to strike are largely denied (whether based on Rule 23, 12(f), or both), and the same should be followed here. *See Mazo*, 2016 WL 4497755, at *2; *Brazil v. Dell Inc.*, No. C–07–01700 RMW, 2008 WL 4912050, at *4 (N.D. Cal. Nov. 14, 2008) (noting at the motion to strike stage that the question is not whether the "class is presently certifiable" but "whether, without further factual development, the class definitions are manifestly non-ascertainable"); *In re Wal-Mart Stores*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[T]he better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.") (quotations and citations omitted).

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   Even the Legal Merits of Defendant's Argument Make Clear that Additional Discovery Is Necessary to Understand who Purchased and Acquired the X2 and X26P CEWs.

Defendant argues that Plaintiff is precluded from representing any law-enforcement agencies that purchased the X2 or X26P CEWs citing federal, state, and local statutes as well as the Eleventh Amendment of the U.S. Constitution.  It argues that these statutes and the Eleventh Amendment require the government's authorization for Plaintiff to represent it.  However, "[t]he ability of private parties to bind States as absent class members in a Rule 23(b)(3) opt-out class is an open question of law," and "[t]he inclusion of States as absent class members falls in a gray area of Eleventh Amendment jurisprudence."  *See In re Flonase Antitrust Litig.*, No. 08-3301, 2015 WL 9273274, at *5, n.7 (E.D. Penn. 2015) (citing several district court cases that certified settlement classes that included state governments and agencies as absent class members and some courts that suggested a class may be precluded from including state entities as absent class members under the Eleventh Amendment); *see also* 6 NEWBERG ON CLASS ACTIONS § 18:23 (5th ed.) (noting that the courts have split on whether state entities may be encompassed as class members in (b)(3) class actions).

The most compelling argument against Defendant's position is the fact that government agencies can opt-out of a class action if they so choose.  *See Southern States Police Benev. Ass'n Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007).  In *Southern States Police Benev. Ass'n*, the court certified a class of law enforcement personnel, organizations and other individuals and entities in certain states who purchased defendant's bullet-proof vests, which plaintiff alleged were defective.  The class excluded federal agencies but did not exclude state and local government agencies.  The court rejected defendant's

contention that such agencies, including police departments, could not be represented as part of the class:

> The Court finds the defendants' arguments unavailing. The authorities cited by the defendants do not mean that state agencies *cannot* be part of a class in this case. Moreover, the Court is persuaded by the cases cited by the plaintiffs which support their argument that this Court has certified state agencies as part of a class action so long as they are afforded the opportunity to opt out of the class. *See In re Lupron Mktg. & Sales Practices Litig.,* 228 F.R.D. 75 (D.Mass.2005); *Meyer v. Putnam Intern. Voyager Fund,* 220 F.R.D. 127 (D.Mass.2004); *In re New England Mut. Life Ins. Co. Sales Practices Litig.,* 183 F.R.D. 33 (D.Mass.1998). It appears, therefore, that police departments may be certified as part of the class so long as they are afforded the opportunity to opt out of the class.

241 F.R.D. at 93.

An influential case in this area is *In re Flonase Antitrust Litigation*, No. 08-3301, 2015 WL 9273274 (E.D. Penn. 2015), *aff'd* 879 F.3d 61 (3d Cir. 2017).  That litigation involved a class settlement, which included the U.S. and state governments, their agencies, etc. to the extent they purchased Flonase and/or its generic equivalents for their employees or others covered by a government employee health plan.  *See id.* at *1.  Over a year after the settlement agreement was approved by the Eastern District of Pennsylvania, Louisiana's Attorney General filed a lawsuit in Louisiana state court seeking to recover for purchases of Flonase.  The defendant filed an action to enforce the class settlement, which the State of Louisiana moved to dismiss.  Although the court granted the motion to dismiss and denied the defendant's motion to enforce the class settlement, its decision was heavily influenced by the fact that the State of Louisiana only received a CAFA notice (as opposed to a notice that it was a class member), which was insufficient to waive Eleventh Amendment sovereign immunity.   2015 WL 9273274. Importantly, the court did not decide "the broader question of whether the Eleventh Amendment ever permits a State to be bound as an absent class member in a Rule 23(b)(3) opt-out class." *See id.* at *5.   Instead, it added a very detailed footnote and addressed both sides of the

1  argument.  As a reason for allowing class actions that include governmental entities, it noted the

2  ability of the government to opt-out:

3      **The ability of private parties to bind States as absent class members in a Rule
       23(b)(3) opt-out class is an open question of law.** Several district courts have
4      certified settlement classes that include state governments and agencies as absent
       class members. *See, e.g.*, *In re Neurontin Mktg., Sales Practices & Prods. Liab.*
5      *Litig.*, No. 04-cv-10981, ECF No. 4302, at 3 (D. Mass. Nov. 7, 2014); *S. States
       Police Benevolent Ass'n v. First Choice Armor & Equip.*, 241 F.R.D. 85, 93 (D.
6      Mass. 2007); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D.
       Mass. 2005). In *Southern States Police Benevolent Association*, for example, the
7      district court specifically found that a court may "certif[y] state agencies as part of
       a class action," even if they do not explicitly authorize class counsel to represent
8      them, "so long as they are afforded the opportunity to opt out of the class." 241
       F.R.D. at 93.
9

10 *See id.* at *5 n.7 (emphasis added).[3]

11

12     It also noted the peculiar use of the Eleventh Amendment in this situation because the

13 Eleventh Amendment is usually raised in actions brought against the government (rather than for

14 the government):

15     **Indeed, the inclusion of States as absent class members falls in a gray area of
       Eleventh Amendment jurisprudence.** Most Eleventh Amendment cases involve
16     suits *against* a State—i.e., attempts to hale a State into federal court as a
       defendant—rather than suits brought on behalf of States. At least one circuit has
17     held that state agencies cannot be involuntarily joined under Federal Rule of Civil
       Procedure 19, even if the state agency would be realigned as a plaintiff, because
18     involuntary joinder would "compel [the state agency] to act by forcing it to
       prosecute [its claims] at a time and place dictated by the federal courts." *Thomas
19     v. FAG Bearings Corp.*, 50 F.3d 502, 505 (8th Cir. 1995). But unlike involuntary
       joinder, which may compromise a State's dignity by forcing it to bring its claims
20     in a particular forum, under Rule 23(b)(3) a State has the ability to opt out of a
       class and retain complete control of its claims. This opt-out mechanism, then,
21     might serve "to avoid the indignity of subjecting a State to the coercive process of
       judicial tribunals at the instance of private parties." *Seminole Tribe*, 517 U.S. at
22     58 (internal quotation marks omitted).
23

24 *See id.* (emphasis added).

25

26 ────────────────

27 [3] Notably, in its form order for class certification, the *Manual for Complex Litigation* does not
   exclude governmental entities.  *See* ANN. MANUAL FOR COMPLEX LITIGATION (Fourth) § 40.41.

28 ──────────────────────────────────────────────

In fact, the language of the Eleventh Amendment itself makes clear that its usage is more appropriate as a **defense** in a proceeding where the government is being sued.  *See* U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, *commenced or prosecuted against* one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.") (emphasis added); *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) (explaining that "the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so").

Defendant also cites CAL. GOV'T CODE § 12511 for requiring the attorney general to represent the State of California.  However, the policy of the California Department of Justice appears to be that local governments are primarily responsible for actions involving law enforcement agencies and that civil actions should be handled by the law enforcement agency itself.  *See* Policy Governing Citizen Complaints Against Law Enforcement, CAL. DEP'T OF JUSTICE, *available at* https://oag.ca.gov/sites/all/files/agweb/pdfs/consumers/le_complaint_policy.pdf? (last visited May 25, 2020) ("It is the Department of Justice general policy that local government will be primarily responsible for citizen complaints against law enforcement agencies or employees of law enforcement agencies, and that appropriate local resources (e.g. sheriff or police department and district attorney) be utilized for resolution of such complaints prior to a request for intervention by the Attorney General. . . . Allegations of police misconduct that are not criminal are handled exclusively by the law enforcement agency.").

Defendant cited no case law holding that local and municipal governments cannot be members of a class.  In fact, one of the cases that Defendant relies heavily on throughout its argument supports the contrary.  The court in *In re McKesson Governmental Entities Average*

*Wholesale Price Litig.*, 767 F. Supp. 2d 263, 278 (D. Mass. 2011) certified a class of "[a]ll non-federal and non-state governmental entities in the United States and its Territories . . ." that was represented by local and municipal government entities. And, although the court re-defined the class to exclude state agencies, it noted that it "could find no appellate case law addressing the question of whether states can be included in a class action." *See id.* at 271. The court chose "not to address this novel constitutional issue," and instead, based its decision to exclude states from the class definition on the certification element of superiority. *See id.*

In light of *McKesson*, California law enforcement agencies should not be excluded from the class definition, especially if the agencies would otherwise be representing themselves or be represented by their local governments. Regardless, however, the issue is simply premature at this stage. *Cf. Ahmed v. HSBC Bank USA, Nat'l Assoc.*, No. ED CV 15-2057 FMO (SPx), 2017 WL 5765734, at *1 (C.D. Cal. Nov. 6, 2017) (rejecting defendants' argument that the plaintiffs could not represent certain class members and noting that "'[a] request to find that Plaintiff does not have standing does not fall within the scope of Rule 12(f)'") (citations omitted). *McKesson* was a decision on class certification. As with such a decision, an opportunity for discovery should be afforded. For example, even assuming that a certain division of government (state, federal, local, etc.) needs to be excluded from Plaintiff's class definition, we still have no way to know how many X2 or X26P CEWs were sold to law enforcement agencies much less which types of agencies purchased the products or how many were sold to a specific division. Defendant's own brief confusingly suggests that other agencies besides law enforcement, such as the "U.S. Forest Service," also used these CEWs.[4] *See* (ECF No. 61 at p. 21).

---

[4] To the extent federal agencies also purchased the X2 and X26P CEWs, Defendant cites no case law stating that these agencies can never be included as absent class members, especially considering that they will have the same option to opt-out of the class as local and state agencies.

At this stage, we only have Defendant's word that the products were sold primarily to law enforcement, which is not only heavily contradicted by its own website, but also tells us nothing about what types of law enforcement agencies (federal, state, local, etc.) purchased the X2 and X26P models.  Again, even assuming that Defendant is correct on the merits of some or all of its arguments regarding Plaintiff's representation of federal, state, or local governments, Defendant has not argued that a class of individual acquirers of the X2 and X26P could not be certified if such individuals exist.  Discovery is the only way to learn who those individuals are.

## III.   Defendant's Predominance Argument Does Not Support Striking the Class Allegations.

Assuming that the X2 and X26P are primarily for law enforcement, Defendant argues that the class allegations should be struck because predominance could never be satisfied as there is a distinction between how the models are sold to the individual consumer versus law enforcement agencies.  Yet, Defendant does not suggest that any marketing or sales materials provided to law enforcement agencies would have put the agencies on notice of the safety defect. Discovery could show that marketing materials to both individual consumers and law enforcement agencies similarly failed to disclose the safety mechanism defect at issue.  Like consumers, law enforcement agencies also have the option to purchase the X2 and X26P model CEWs from Defendant's website.  *See, e.g.*, TASER X26P, AXON, *available at* https://buy.axon.com/ccrz__ProductDetails?viewState=DetailView&cartID=&portalUser=&store=&cclcl=en_US&sku=TASERX26P (last visited May 28, 2020), attached hereto as Exhibit D; TASER X2, AXON, *available at* https://buy.axon.com/ccrz__ProductDetails?viewState=DetailView&cartID=&portalUser=&store=&cclcl=en_US&

---

Notably, the U.S. and its agencies and departments were also included within the class definition certified in *Flonase Antitrust Litig.*, 2015 WL 9273274, at *1.

sku=taserx2 (last visited May 28, 2020), attached hereto as Exhibit E.  Therefore, Defendant's statement that "**all**" law enforcement transactions involve "agency-specific sales meetings, negotiations, communications, and contracts" is suspect.  *See* (ECF No. 61 at p. 24) (emphasis added).

Consistent with Plaintiff's allegations that Defendant defrauded its customers by failing to disclose the safety mechanism defect, neither the website pages selling the X2 and X26P to law enforcement agencies nor those selling them to individual citizens disclose that defect.  *See* Exhibits B, C, D, & E.  In fact, Defendant actually boasted the safety of the X2 and X26P products to its online law enforcement buyers.  For example, it marketed the X2 to be a "dependable piece of law enforcement technology" with a smart cartridge that "lowers the risk of accidental discharge."  *See* Exhibit E at pp. 2–3.  Similarly, it marketed the X26P for its safety features: "Safer and more effective than the X26E, the TASER X26P is a piece of law enforcement technology that's been improved inside and out to help you act confidently in the field."  *See* Exhibit D at p.2.

To strike the class allegations based on Defendant's entirely unsupported and speculative predominance argument would strip the ability of parties to bring fraud class actions in the first place.  *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 990–92 (9th Cir. 2006) (noting that the Ninth Circuit follows "an approach that favors class treatment of fraud claims stemming from a 'common course of conduct'" and explaining that the "class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims") (citations omitted); *see generally Jenson v. Fiserv Trust Co.*, 256 Fed. App'x 924, 926 (9th Cir. 2007) ("[C]ommon issues do not necessarily fail to predominate simply because reliance must be shown.").

However, as with the rest of Defendant's arguments, it is simply premature to decide this issue at the motion to strike stage before a decision on class certification or an opportunity for discovery.  *See Brazil v. Dell Inc.*, No. C–07–01700 RMW, 2008 WL 4912050, at *4 (N.D. Cal. Nov. 14, 2008) (refusing to strike class allegations despite defendant's argument that the class allegations faced "individualized reliance, causation, and injury issues").  This is especially true where, once again, Defendant's arguments seem undermined by its very own website.

## **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendant's Motion to Strike the class allegations in its entirety.

Respectfully submitted,

Dated: May 28, 2020                    JONES LAW FIRM LLC

By:            */s/ Charles A. Jones*
              CHARLES A. JONES (State Bar No. 6698)
              caj@cjoneslawfirm.com
              KELLY MCINERNEY (State Bar No. 7443)
              Kelly@cjoneslawfirm.com
              JONES LAW FIRM LLC
              9585 Prototype Court, Suite B
              Reno, NV 89521
              Telephone:      775-853-6440
              Facsimile:      775-853-6445

              J. Matthew Stephens
              (*Pro Hac Vice*)
              James M. Terrell
              (*Pro Hac Vice*)
              Courtney C. Gipson
              (*Pro Hac Vice*)
              METHVIN, TERRELL, YANCEY,
              STEPHENS & MILLER, P.C.
              2201 Arlington Avenue South
              Birmingham, AL 35205
              Telephone:      (205) 939-0199

Facsimile:      (205) 939-0399
mstephens@mmlaw.net
jterrell@mmlaw.net
cgipson@mmlaw.net

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the law office of Jones Law Firm and that on this 28th day of May, 2020, I e-filed a true and correct copy of the foregoing *Plaintiff's Opposition to Defendant's Motion to Strike Class Allegations Pursuant to Rule 23(d)(1)(D)* with the Clerk of the Court through the Court's CM/ECF electronic filing system and notice will be sent electronically to the following:

KRISTEN L. MARTINI, ESQ.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
One East Liberty Street, Suite 300
Reno, NV 89501
Tel: 775.823.2900
Fax: 775.823.2929
kmartini@lrrc.com

J. CHRISTOPHER JORGENSEN
BRIAN DOUGLAS BLAKELY
ADRIENNE BRANTLEY-LOMELI, ESQ.
3993 Howard Hughes Pkwy., Ste 600
Las Vegas, NV 89169
Tel: 702-474-8200
cjorgensen@lrrc.com
Bblakley@lrrc.com
abrantley-lomeli@lrrc.com

PAMELA B. PETERSEN, ESQ.
AMY L. NGUYEN, ESQ. (*Pro Hac*)
AXON ENTERPRISE, INC.
17800 N. 85th Street
Scottsdale, AZ 85255
Tel: 623.326.6016
Fax: 480.905.2027
ppetersen@axon.com
amynguyen@axon.com
legal@axon.com

*Attorneys for Defendant Axon Enterprise, Inc.*

/s/      *Belinda Watson*
BELINDA WATSON

## INDEX OF EXHIBITS

| Exhibit | Description | Number of Pages |
|---------|-------------|-----------------|
| A | Defendant's Help Center Website Pages | 3 |
| B | Defendant's X2 Website Pages for Civilians | 5 |
| C | Defendant's X26P Website Pages for Civilians | 6 |
| D | Defendant's X26P Website Pages for Law Enforcement | 3 |
| E | Defendant's X2 Website Pages for Law Enforcement | 3 |